UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PNM RESOURCES, INC., PATRICIA K. COLLAWN, VICKY A. BAILEY, NORMAN P. BECKER, E. RENAE CONLEY, ALAN J. FOHRER, SIDNEY M. GUTIERREZ, JAMES A. HUGHES, MAUREEN T. MULLARKEY, DONALD K. SCHWANZ, and BRUCE W. WILKINSON,<br><br>　　　　Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.　　This is an action brought by Plaintiff against PNM Resources, Inc. ("PNMR" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which PNMR will be acquired by Avangrid, Inc. ("Avangrid"), through its wholly owned subsidiary NM Green Holdings, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On October 21, 2020, PNMR and Avangrid issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 3, 2020 (the "Merger Agreement") to sell PNMR to Avangrid. Under the terms of the Merger Agreement, each PNMR stockholder will receive $50.30 in cash for each share of PNMR common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at $8.3 billion.

3. On January 5, 2021, PNMR filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that PNMR stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) PNMR management's financial projections relied upon by Evercore Group L.L.C. ("Evercore") for its financial analyses and the data and inputs underlying the valuation analyses performed by Evercore; and (ii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, PNMR's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. PNMR's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of PNMR.

9. Defendant PNMR is a New Mexico corporation with its principal executive offices located at 414 Silver Ave. SW, Albuquerque, New Mexico 87102. The Company is an energy holding company with 2019 consolidated operating revenues of $1.5 billion. PNMR's common stock trades on the New York Stock Exchange under the ticker symbol "PNMR."

10. Defendant Patricia K. Collawn ("Collawn") has served as Chairman of the Board since 2012, President and Chief Executive Officer ("CEO") since 2010, and a director of the Company since March 1, 2010.

11. Defendant Vicky A. Bailey ("Bailey") has been a director of the Company since January 1, 2019.

12. Defendant Norman P. Becker ("Becker") has been a director of the Company since May 2016.

13. Defendant E. Renae Conley ("Conley") has been a director of the Company since May 15, 2014.

14. Defendant Alan J. Fohrer ("Fohrer") has been a director of the Company since March 1, 2012.

15. Defendant Sidney M. Gutierrez ("Gutierrez") has been a director of the Company since May 12, 2015.

16. Defendant James A. Hughes ("Hughes") has been a director of the Company since January 1, 2019.

17. Defendant Maureen T. Mullarkey ("Mullarkey") has been a director of the Company since May 15, 2014.

18. Defendant Donald K. Schwanz ("Schwanz") has been a director of the Company since July 29, 2008.

19. Defendant Bruce W. Wilkinson ("Wilkinson") has been a director of the Company since May 18, 2010.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Avangrid is a New York corporation with its principal executive offices located at 180 Marsh Hill Road, Orange, Connecticut 06477. It is a leading, sustainable energy company with approximately $35 billion in assets and operations in 24 U.S. states. Avangrid has two primary lines of business: Avangrid Networks and Avangrid Renewables. Avangrid Networks owns eight electric and natural gas utilities, serving more than 3.3 million customers in New York and New England. Avangrid Renewables owns and operates a portfolio of renewable energy generation facilities across the United States. Avangrid's common stock trades on the New York Stock Exchange under the ticker symbol "AGR."

22. Merger Sub is a New Mexico corporation and a direct, wholly owned subsidiary of Avangrid.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23. PNMR is an investor-owned holding company with two regulated utilities providing electricity and electric services in New Mexico and Texas. PNMR's electric utilities are Public Service Company of New Mexico and Subsidiaries ("PNM") and Texas-New Mexico Power Company and Subsidiaries ("TNMP").

24. PNM is an electric utility that provides electric generation, transmission, and distribution service to its rate-regulated customers. PNM was incorporated in the State of New Mexico in 1917. PNM's retail electric service territory covers a large area of north-central New Mexico, including the cities of Albuquerque, Rio Rancho, and Santa Fe, and certain areas of southern New Mexico. The largest retail electric customer served by PNM accounted for 2.6% of its revenues for the year ended December 31, 2019. Other services provided by PNM include wholesale transmission services to third parties as well as the generation and sale of electricity into the wholesale market, which services are regulated by the Federal Energy Regulatory Commission. PNM owns transmission lines that are interconnected with other utilities in New Mexico, Texas, Arizona, Colorado, and Utah.

25. TNMP is a regulated utility operating and incorporated in Texas. TNMP's predecessor was organized in 1925. TNMP provides transmission and distribution services in Texas under the provisions of the Texas Electric Choice Act and the Texas Public Utility Regulatory Act. TNMP serves a market of small to medium sized communities, most of which have populations of less than 50,000. TNMP is the exclusive provider of transmission and distribution services in most areas it serves.

26. On October 30, 2020, PNMR announced its third quarter 2020 financial results and highlights, including Electric Operating Revenues of $455.1 million, as compared with $418.7 million in the same period of 2019; Net Earnings of $125.5 million, up from $106.8 million in the third quarter of 2019; GAAP Earnings Per Share ("EPS") of $1.52, up from $1.28 for the same quarter in the prior year; and Ongoing EPS of $1.40, up from $1.31 in the third quarter of 2019.

**The Proposed Transaction**

27. On October 21, 2020, PNMR and Avangrid issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> ORANGE, Conn. -- AVANGRID (NYSE: AGR), a leading sustainable energy company, and PNM Resources (NYSE: PNM) announced today that their respective boards have approved the merger of PNM Resources into AVANGRID.
>
> Ignacio Galán, chairman of AVANGRID and chairman of IBERDROLA Group, said: "This transaction is a consequence of the IBERDROLA Group's disciplined strategy followed over more than 20 years. This is a friendly transaction, focused on regulated businesses and renewables in highly rated states with legal and regulatory stability and predictability offering future growth opportunities."
>
> Dennis V. Arriola, AVANGRID's CEO who will continue as CEO of the combined Company said: "This merger between AVANGRID and PNM Resources is a strategic fit and helps us further our growth in both clean energy distribution and transmission, as well as helping to expand our growing leadership position in renewables. Our two companies also share the same values as we both are passionate about our customers, employees and the communities we serve. In addition, both AVANGRID and PNM Resources are leaders in environmental, social and governance issues that impact our stakeholders."
>
> Pat Vincent-Collawn, chairman, president and CEO of PNM Resources stated: "We are excited to be part of this transaction that provides so many benefits to our customers, communities, employees and shareholders. Our combined companies provide greater opportunities to invest in the infrastructure and new technologies that will help us navigate our transition to clean energy while maintaining our commitments to our local teams and communities."
>
> AVANGRID will add two independent board members from PNM Resources to its board of directors and one independent board member from PNM Resources will join the AVANGRID Networks board.
>
> **Key highlights:**

- The transaction is expected to be EPS accretive in the first full year after closing.

- As a result of PNM's earnings from regulated distribution and transmission assets, it is expected that AVANGRID's regulated earnings contribution post-transaction will exceed 80%. This proportion of regulated earnings will support AVANGRID's fast growing renewables business over the next decade.

- The purchase price represents a premium of 10% over the PNM's share price as of Tuesday 20th October and 19.3% over the average PNM share price during the 30 days prior to 21st October.

- AVANGRID's majority shareholder, Iberdrola, has provided the company with a funding commitment letter for the entire equity proceeds for the transaction.

- As a result of this transaction, PNM's shareholders will receive approximately $4.318 billion in cash.

The agreement between AVANGRID and PNM Resources is subject to approval by PNM Resources shareholders. In addition, the transaction will require approval from a number of state and federal regulators including the New Mexico Public Regulation Commission, Public Utility Commission of Texas, Federal Energy Regulatory Commission, Hart Scott Rodino Clearance, Committee on Foreign Investment in the United States, Federal Communications Commission and the Nuclear Regulatory Commission. Regulatory approvals are expected to be completed in approximately 12 months.

AVANGRID currently owns 1,900 MW of renewable energy and a pipeline of 1,400 MW of renewables assets in New Mexico and Texas. In addition, Iberdrola operates a retail business in Texas. For more than 15 years, Iberdrola has also funded the King Felipe VI Chair in the Department of Electrical and Computer Engineering at the University of New Mexico.

**Insiders' Interests in the Proposed Transaction**

28.   PNMR insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of PNMR.

29.     Notably, certain Company insiders will secure positions for themselves with the combined company.  For example, two current members of the Board will serve on the combined company's board of directors, and one PNMR Board member will join the Avangrid Networks board.  Further, Joseph D. Tarry, PNMR's current Chief Financial Officer, will serve as President and CEO of PNMR, which will be a wholly-owned subsidiary of Avangrid upon completion of the Proposed Transaction.

30.     Moreover, PNMR insiders also stand to reap substantial financial benefits for securing the deal with Avangrid.  Pursuant to the Merger Agreement, all outstanding restricted stock rights and performance shares will vest and convert into the right to receive cash payments.  The following tables summarize the value of the transaction related compensation Company insiders stand to receive:

| Name | Restricted Stock Rights (not deferred) (#) | Restricted Stock Rights (deferred) (#) | Total Value of Restricted Stock Rights[1] ($) |
|---|---|---|---|
| Vicky A. Bailey | 3,124 | — | 157,137.20 |
| Norman P. Becker | — | 7,686 | 386,605.80 |
| Renae E. Conley | — | 3,124 | 157,137.20 |
| Alan J. Fohrer | — | 7,686 | 386,605.80 |
| Sidney M. Gutierrez | 3,124 | — | 157,137.20 |
| James A. Hughes | — | 5,342 | 268,702.60 |
| Maureen T. Mullarkey | — | 7,686 | 386,605.80 |
| Donald K. Schwantz | 3,124 | — | 157,137.20 |
| Bruce W. Wilkinson | 3,124 | — | 157,137.20 |

| Name | Restricted Stock Rights (#) |
|---|---|
| Patricia K. Collawn | 26,521 |
| Charles N. Eldred | 7,321 |
| Joseph D. Tarry | 2,175 |
| Patrick V. Apodaca | 4,030 |
| Chis M. Olson | 3,107 |
| Ronald N. Darnell | 3,052 |

| Executive Officer | Target Performance Shares (#) | Maximum Performance Shares (#) |
|---|---|---|
| Patricia K. Collawn | 114,656 | 229,314 |
| Charles N. Eldred | 34,094 | 68,190 |
| Joseph D. Tarry | 11,161 | 22,326 |
| Patrick V. Apodaca | 14,797 | 29,594 |
| Chis M. Olson | 12,101 | 24,206 |
| Ronald N. Darnell | 11,891 | 23,785 |

31. In addition, under the terms of the merger agreement, PNMR may establish a cash-based retention program of up to $4 million, from which PNMR may grant retention awards to employees, including executive officers.

32. Furthermore, if they are terminated in connection with the Proposed Transaction, PNMR's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash[1] ($) | Equity[2] ($) | Perquisites/ Benefits[3] ($) | Other[4] ($) | Total($) |
|---|---|---|---|---|---|
| Patricia K. Collawn | 9,066,706 | 9,904,875 | 49,377 | 20,000 | 19,040,958 |
| Charles N. Eldred | 3,862,189 | 2,906,938 | 31,757 | 20,000 | 6,820,884 |
| Joseph D. Tarry | 1,936,004 | 944,030 | 39,421 | 20,000 | 2,939,455 |
| Patrick V. Apodaca | 2,343,415 | 1,310,214 | 39,578 | 20,000 | 3,713,207 |
| Ronald N. Darnell | 1,742,459 | 1,043,272 | 52,201 | 20,000 | 2,857,932 |
| Chris M. Olson | 1,819,374 | 1,059,620 | 38,868 | 20,000 | 2,937,862 |

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

33. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to PNMR's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

34. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) PNMR management's financial projections relied upon by Evercore for its financial analyses and the data and inputs underlying the valuation analyses performed by Evercore; and (ii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning PNMR Management's Financial Projections and Evercore's Financial Analyses***

35. The Proxy Statement omits material information regarding Company management's financial projections.

36. For example, with respect to the Company's projections, the Proxy Statement fails to disclose: (i) the standalone, unlevered, after-tax free cash flows ("UFCFs") PNMR was expected to generate over the period from October 20, 2020 through December 31, 2024 and each of the line items underlying the Company's UFCFs, including (a) operating income plus income from Nuclear Decommissioning Trust ("NDT") / Other, (b) taxes, (c) change in net working capital, (d) other non-cash expenses/(gains), and (e) non-cash gains from NDT; and (ii) EBITDA.

37. Additionally, the Proxy Statement describes Evercore's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, PNMR's public stockholders are

unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

38. With respect to Evercore's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) the UFCFs that PNMR was expected to generate over the period from October 20, 2020 through December 31, 2024; (ii) quantification of the estimate of terminal year UFCF used in the analysis; (iii) the Company's 2024 EBITDA; (iv) quantification of the inputs and assumptions underlying the discount rate of 5.5% in the case of Evercore's analysis based on the perpetuity growth method and 5.0% to 6.0% in the case of Evercore's analyses using the terminal multiple methods; (v) PNMR management's estimate of PNMR's net debt as of September 30, 2020 (taking into account cash estimated to be received from expected settlement of forward equity issuances in 2021); and (vi) the Company's fully diluted outstanding shares as of September 30, 2020.

39. With respect to Evercore's *Analysts' Price Targets* analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

40. The omission of this information renders the statements in the "Certain Unaudited Financial Forecasts Prepared by the Management of PNMR" and "Summary of Evercore's Financial Analysis of PNMR" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

42. For example, the October 21, 2020 joint press release announcing the Proposed

Transaction sets forth that:

> Don Tarry, current Chief Financial Officer of PNM Resources, will oversee the continuing operations of PNM and TNMP. Two directors from the current PNM Resources Board will serve as independent directors of AVANGRID. One director from the current PNM Resources Board will also serve on the Board of the Avangrid Networks business.

The Proxy Statement fails, however, to disclose the specific details of any employment and retention-related discussions and negotiations that occurred between PNMR and Avangrid's executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Avangrid's proposals or indications of interest mentioned management retention or equity participation in the combined company.

43. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other PNMR stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and

are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

46. Plaintiff repeats all previous allegations as if set forth in full.

47. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about PNMR management's financial projections relied upon by Evercore for its financial analyses, the data and inputs underlying the valuation analyses performed by Evercore, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52. Plaintiff repeats all previous allegations as if set forth in full.

53. The Individual Defendants acted as controlling persons of PNMR within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PNMR, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, PNMR's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PNMR, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to PNMR stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 8, 2021

**WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*